## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

KIMBERLY MARTINEZ, Mother )
and Next Friend of N.M., a minor, )
                           )
       Plaintiff, )
                           )
-vs- )       Case No. CIV-20-0833-F
                           )
TENESHA RYEL, an individual, and )
WOODWARD PUBLIC SCHOOLS, )
                           )
       Defendants. )
                           )
TENEHA RYEL, an individual, )
                           )
       Third-party plaintiff, )
                           )
-vs- )
                           )
KIMBERLY MARTINEZ, )
WOODWARD PUBLIC SCHOLS, )
JESSICA ROMINE, and CITY OF )
WOODWARD, )
                           )
       Third-party defendants. )

## <u>ORDER</u>

Four motions are before the court.

    -- Defendant and third-party plaintiff Tenesha Ryel's motion to remand.  Doc. no. 13.  Supplemental brief at doc. no. 14.[1]

---

[1] Jessica Romine and The City of Woodward's response brief is at doc. no. 15.  Their supplemental response brief is at doc. no. 24.  No reply brief was filed.

-- Woodward Public School's[2] (the district's) motion to dismiss. Doc. no. 9. The district seeks dismissal from Ryel's cross-claims alleged in the third-party complaint.[3] The district's motion is brought under Rules 12(b)(1) and (6), Fed. R. Civ. P.

-- The City of Woodward's (the city's) motion to dismiss. Doc. no. 4. The city seeks dismissal from Ryel's third-party claims.[4] The city's motion is brought under Rule 12(b)(6), Fed. R. Civ. P.

-- Jessica Romine's motion to dismiss. Doc. no. 5. Romine seeks dismissal from Ryel's third-party claims.[5] Romine's motion is brought under Rule 12(b)(6), Fed. R. Civ. P.

For the reasons set out in this order, the motion to remand will be denied, and the motions to dismiss will be granted.

## I. Procedural Background

This action was filed on May 13, 2019, in the District Court of Woodward County, State of Oklahoma, by Kimberly Martinez, mother and next friend of N.M., a minor. Doc. no. 3-2. Martinez named as defendants Tenesha Ryel (an individual previously employed by the district) and the district. Martinez's claims are state-law tort claims arising out of an alleged incident involving Ryel's use of force to discipline N.M.

On July 22, 2020, Ryel filed a pleading entitled "Counter/Cross-Claims and Third-party Petition" against Martinez, the district, the city and Romine (a police officer with the Woodward Police Department). Doc. no. 3-7. The court will refer

---

[2] Independent School District No. 001 of Woodward County, Oklahoma, is known as Woodward Public Schools.

[3] Ryel's response brief is at doc. no. 27. The district's reply brief is at doc. no. 28.

[4] Ryel's response brief is at doc. no. 25. The city's reply brief is at doc. no. 29.

[5] Ryel's response brief is at doc. no. 26. No reply brief was filed.

to this pleading as the third-party complaint.  Ryel's third-party complaint includes state and federal claims.  Accordingly, the city and Romine removed this action on August 18, 2020.  Doc. no. 1.  They filed an amended notice of removal on August 20, 2020.  Doc. no. 3.

## II. The Third-Party Complaint

Ryel's third-party complaint alleges as follows.

-- Ryel was hired by the district as a para-professional support employee.  In August of 2018, Ryel was assigned by the district to supervise the in-school detention class at Woodward Middle School.  Doc. no. 3-7, ¶¶ 5-6.  The district failed to provide Ryel with proper training and support for this position.  *Id*. at ¶ 7.

-- N.M., the minor child of Martinez, had a long, documented history of various problems of which the district and Martinez were aware.  *Id*. at ¶ 9.  On September 19, 2018, N.M. was placed in the in-school detention class for violations of school policy.  *Id*. at ¶ 8.  On that same date, Ryel sought assistance from her principal due to N.M.'s disruptive behavior.  *Id*. at ¶ 10.  Ryel also sought assistance from Romine, an officer with the Woodward Police Department, but Romine did not respond.  *Id*. at ¶11.  Romine lacked proper training and supervision.  *Id*. at ¶ 12.

-- After receiving no response to Ryel's requests for assistance, Ryel was forced to take action to discipline N.M. due to N.M.'s disruptive behavior.  *Id*. at ¶13.

-- Martinez, N.M.'s mother, complained to the district that Ryel's actions were abusive.  Martinez did so with the intent to extort money from Ryel and the district.  *Id*. at ¶¶14-15.

-- Rather than taking responsibility for their failure to respond to Ryel's requests for help, the district, "through its agents, conspired with Romine and

Martinez to conduct a sham investigation placing all blame on Tenesha [Ryel], hoping to appease Martinez." *Id*. at first-numbered ¶16.[6]

-- As a result of the above conspiracy, Ryel was wrongfully discharged from her position. *Id*. at first-numbered ¶ 17. Also as a result of the conspiracy, Romine "submitted a false police report to [the city], resulting in felony criminal charges being filed against Tenesha [Ryel] in Woodward County." *Id*. at second-numbered ¶ 16. Ryel was arrested and charged with a felony, which forced her to hire counsel and appear in court. *Id*. at second-numbered ¶ 17. On November 27, 2019, the charge was dismissed as without merit. *Id*. Also as a result of the conspiracy, Martinez filed this action. *Id*. at ¶ 18. Other results of the conspiracy (in addition to wrongful discharge, criminal charges, and this lawsuit) were that false information was published in the Woodward News which is still available on-line. Ryel's face and name also appeared in "jail birds." Ryel's reputation has been destroyed and she has lost employment opportunities. *Id*. at ¶19.

-- "As a result of said conspiracy, Tenesha's [Ryel's] civil rights were violated in violation of 42 USC. § 1983-1986." *Id*. at ¶ 20.

-- Ryel suffered damages in excess of $75,000. *Id*. at ¶ 21. The conduct of the third-party defendants "was willful, wanton, malicious and designed to harm Tenesha [Ryel]," and punitive damages should be awarded. *Id*. at ¶ 22.

### III. Motion to Remand

Ryel asks the court to remand this action based on abstention.

The doctrine of abstention, under which a district court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of the district court to adjudicate a controversy properly before

---

[6] The third-party complaint includes two paragraphs numbered 16 and two paragraphs numbered 17.

it.  County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188-89 (1959).  Ryel argues that abstention is appropriate in certain civil rights actions to avoid needless conflict with the state's administration of its own affairs.  She argues that the basis for abstention that applied in Ranchos Palos Verdes Corp. v. City of Laguna Beach, 390 F. Supp.1004 (C.D. Calif. 1975), applies here.  Doc. no. 13, p. 11.

Ranchos Palos Verdes applied the Pullman abstention doctrine.[7]  The policy underlying the Pullman abstention doctrine is that federal courts should avoid premature constitutional adjudication.  Caldara v. City of Boulder, 955 F.3d 1175, 1178 (10th Cir. 2020).  The concern is that a federal court will be forced to interpret a state law without the benefit of state court consideration and render the federal court's decision advisory and the litigation underlying it meaningless.  Id., citing Moore v. Sims, 442 U.S. 415, 428 (1979).  The doctrine avoids federal court error in deciding state-law questions antecedent to federal constitutional issues by allowing for parties to adjudicate disputes involving unsettled state-law issues in state courts. Id., citing Arizonans for Official English v. Arizona, 520 U.S. 43, 76 (1997).  Accordingly, Pullman abstention requires that:

> (1) an uncertain issue of state law underlies the federal constitutional claim;
>
> (2) the state issues are amenable to interpretation and such an interpretation obviates the need for or substantially narrows the scope of the constitutional claim; and
>
> (3) an incorrect decision of state law by the district court would hinder important state law policies.

---

[7] Railroad Commission of Texas v. Pullman Co., 312 U.S. 496 (1941).  In Rancho Palos Verdes, exceptional circumstances called for abstention under Pullman because the federal issues could be avoided depending on the proper interpretation of California's complex statutory scheme regarding land use control, much of which had not been interpreted by state courts.  390 F. Supp. at 1005-06.

*Id*. at 1179, citing <u>Lehman v City of Louisville</u>, 967 F.2d 1474, 1478 (10th Cir. 1992).

Ryel has not identified any unsettled issues of state law. Nor has Ryel explained how any unsettled issues of state law, once determined by the state court, would obviate the need for, or substantially narrow the scope of, Ryel's federal constitutional claims. There is no basis for abstention under <u>Pullman</u> or any other abstention doctrine.[8]  Ryel's motion to remand will be denied.

### IV.  Motions Seeking Dismissal
### From Ryel's Third-Party Complaint

The court will address the movants' challenges to the sufficiency of Ryel's federal claims, after which it will address Ryel's state-law claims.

### A.  Ryel's Federal Claims

The district, the city and Romine move for dismissal from Ryel's federal claims under Rule 12(b)(6).

The inquiry under Rule 12(b)(6) is whether the complaint contains enough facts to state a claim for relief that is plausible on its face. <u>Ridge at Red Hawk, L.L.C. v. Schneider</u>, 493 F.3d 1174, 1177 (10th Cir., 2007), quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 547 (2007). To survive a  motion to dismiss, a plaintiff must nudge her claims across the line from conceivable to plausible. *Id*. The mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims. <u>Ridge at Red Hawk</u>, 493 F.3d at 1177. In conducting its review, the court assumes the truth of the plaintiff's well-pleaded factual allegations and views them in the light most favorable to the plaintiff. *Id*.

---

[8] Ryel makes no developed argument about any abstention doctrine other than <u>Pullman</u>.

Pleadings that are no more than legal conclusions are not entitled to the assumption of truth; while legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  Ashcroft v. Iqbal, 556 U.S.662, 664 (2009).  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.  *Id*. The court will disregard mere "labels and conclusions" and "[t]hreadbare recitals of the elements of a cause of action" to determine if what remains meets the standard of plausibility.  Twombly, 550 U.S. at 555; Iqbal, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Ryel's federal claims are *conspiracy* claims brought under 42 U.S.C. §§1983-86.  This is clear because the allegation specific to the federal claims states that:

> As a result of said conspiracy, Tenesha's [Ryel's] civil rights were violated in violation of 42 USC § 1983-1986.

Doc. no. 3-7, ¶ 20.  The conspiracy in question is described as follows in the third-party complaint:

> Rather than taking responsibility for their failure to respond to Tenesha's requests for help, WPS [the district], through its agents, conspired with Romine and Martinez to conduct a sham investigation placing all blame on Tenesha, hoping to appease Martinez.

*Id*. at first-numbered ¶ 16.

The first question is to what extent the statutes cited in the third-party complaint—42 U.S.C. §§ 1983-1986—can, as a matter of law, potentially support some type of a conspiracy claim.

Section 1983.  As pertinent here, 42 U.S.C. § 1983 provides that every person who, under the color of the law of any state, subjects any citizen of the United States to the deprivation of any rights secured by the United States Constitution or federal law, shall be liable to the party injured.  A conspiracy claim may be brought under § 1983, but such a claim requires, among other things, an actual deprivation of a right secured by the United States Constitution or federal law.  <u>Dixon v. City of Lawton</u>, 898 F.2d 1443, 1449 (10th Cir. 1990).  This is because the essence of a §1983 claim is the deprivation of the right rather than the conspiracy.  *Id*.

Section 1984.  Subsections one and two of § 1984 have been declared unconstitutional.  <u>In re "The Civil Rights Cases</u>," 109 U.S. 3 (1883).  Subsections three and four were repealed in 1948.  Accordingly, § 1984 cannot support a federal conspiracy claim (or any other kind of claim).

Section 1985.  The only potentially relevant subsection of § 1985 is subsection (3).  Subsection (3) applies to a private conspiracy that is driven by some racial or otherwise class-based discriminatory animus.  <u>Brooks v. Gaenzle</u>, 614 F.3d 1213, 1227 (10th Cir. 2010), citing <u>Dixon</u>, 898 F.2d at 1447.  These types of conspiracy claims may be brought under §1985(3).

Section 1986.  As pertinent here, § 1986 provides that every person who, having knowledge that any of the wrongs conspired to be done and mentioned in §1985 are about to be committed, and having the power to prevent or aid in the preventing of the commission of the same, and who neglects or refuses to do so, shall be liable to the injured party if such wrongful act is committed.  Thus, a claim under § 1986 depends upon an actionable conspiracy claim under § 1985.  <u>Brown v. Reardon</u>, 770 F.2d 896, 907 (10th Cir. 1985).  In other words, § 1986 provides a cause of action against a person for failure to act to prevent a § 1985 conspiracy, but § 1986 is not, itself, a conspiracy statute.

In short, movants are entitled to dismissal with prejudice from Ryel's federal conspiracy claims brought under §1984 and §1986.  On the other hand, conspiracy claims are potentially available under §1983 and §1985(3).  The next question, therefore, is whether Ryel has plausibly alleged a conspiracy claim against any of the movants under § 1983 or § 1985(3).  For the reasons stated below, the court finds she has not.

Differences exist between § 1983 and § 1985(3) conspiracies. For instance, §1983 applies to defendants acting under color of state law, while §1985(3) applies to private conspiracies driven by some racial or otherwise class-based discriminatory animus.  Brooks, 614 F.3d at 1227.  That said, a § 1983 conspiracy and a §1985(3) conspiracy also have certain things in common.  A conspiracy under either of these statutes requires at least a combination of two or more persons acting in concert and an allegation of a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective.  Id. at 1227-28.  Moreover, a plaintiff must allege specific facts showing an agreement and concerted action among the defendants because conclusory allegations of conspiracy are insufficient.  Id. at 1228.[9]  And see, Tonkovich v. Kansas Board of Regents, 159 F.3d 504, 533-34 (10th Cir. 1998) (decided at the motions to dismiss stage in the context of defendants' qualified immunity argument; plaintiff must allege specific facts showing an agreement and concerted action among the defendants; conclusory allegations did not carry plaintiff's burden to allege facts to support conspiracy claim).

---

[9] Brooks was decided at the summary judgment stage but there was a pleadings issue.  On appeal, Brooks argued he had sufficiently pled a conspiracy under § 1983 based on the entirety of his complaint.  614 F.3d at 1227.  The amended complaint, however, alleged that deputies Gaenzle and Smith "conspired to make false reports and statements in the official proceedings investigating [Deputy] Gaenzle's shooting of [Brooks] in violation of 42 U.S.C. § 1985."  Id. at 1226.  Whether considered as a § 1983 or a § 1985 conspiracy claim, the court of appeals agreed with the district court that Brooks' "vague claim in his complaint of an alleged conspiracy does not raise a triable issue of fact the deputies participated in a conspiracy."  Id. at 1228.

Ryel's third-party complaint alleges a motivation for the conspiracy, which was to place all blame on Ryel and appease Martinez.  But there are no alleged facts to show an agreement and concerted action among the third-party defendants to violate Ryel's federal constitutional rights.  Even if the third-party defendants acted in ways consistent with one another, or even if they all wished to blame Ryel and appease Martinez, that would not be enough to plausibly allege that the district, the city, Romine and Martinez agreed among themselves to violate Ryel's civil rights.  Because the third-party complaint alleges no specific facts which, if proven, would show an agreement or concerted action to violate Ryel's civil rights, Ryel's conspiracy claims brought against the movants under § 1983 and §1985(3) fail under Rule 12(b)(6).

The §1983 and § 1985(3) conspiracy claims also fail for reasons which apply only to § 1983 conspiracies or only to § 1985(3) conspiracies, as discussed next.

A § 1983 conspiracy requires pleading, and ultimately proving, not only the existence of a conspiracy but also an actual deprivation of rights secured by the United States Constitution or federal law.  <u>Dixon</u>, 898 F.2d 1443, 1449.  As explained below, the third-party complaint does not plausibly allege an actual deprivation of Ryel's federal constitutional rights by any of the alleged conspirators (the district, the city, Romine or Martinez).

<u>The district</u>.  The district allegedly acted, "through its agents," to conduct a sham investigation in order to place all blame on Ryel and appease Martinez.  In addition, Ryel alleges that the district assigned Ryel to supervise the in-school detention class; that the district was aware of N.M.'s problems; that the district failed to respond to Ryel's call for assistance with N.M.; and that as a result of the conspiracy, the district wrongfully discharged Ryel.  Ryel does not allege the identity of the agents who took any of the above-described acts on behalf of the district.  But even if she had done so, a defendant cannot be held liable for a §1983 violation based

10

on a theory of respondeat superior.  Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978); Murrell v. Sch. Dist. No. 1, 186 F.3d 1238, 1249 (10th Cir. 1999) (citing Monell).  Under Monell, a government entity is not liable under §1983 for injury "inflicted solely by its employees or agents."  Monell, 436 U.S. at 694.  Rather, a plaintiff must show that the complained-of actions were "representative of an official policy or custom of the municipal institution, or are taken by an official with final policy making authority."  Murrell, 186 F.3d at 1249.[10] No such facts are alleged in the third-party complaint.

The only other allegation regarding conduct by the district is that the district "failed to offer/provide Tenesha [Ryel] proper training and support" for her position. Ryel does not allege how she was trained, nor does she allege how a failure to train her or support her led to the deprivation of her federal constitutional rights by the district.  The failure to train or support allegations are conclusory and do not state a claim for deprivation of Ryel's federal constitutional rights by the district.

No underlying deprivation of rights protected by § 1983 is plausibly alleged on the part of the district.

The city.  Ryel's claim that the city deprived her of her federal constitutional rights rests primarily on the actions of Romine, an officer with the Woodward Police Department.  Ryel alleges that Romine failed to respond to Ryel's request for help with N.M., that Romine conspired with the district and Martinez to conduct a sham investigation, and that Romine submitted a false police report to the city resulting in an arrest of Ryel on a felony charge which was later dismissed.  These allegations

---

[10] And see, Schneider v. City of Grand Junction Police Dep't., 717 F.3d 760, 769-70 (10th Cir. 2013) ("A challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision.").

fail to state a claim against the city under §1983 because a §1983 claim cannot be based on the acts of an agent (Romine) via the doctrine of respondeat superior.

In addition to the above allegations, Ryel alleges that Romine "lacked proper training and supervision." The third-party complaint does not allege any specifics about Romine's training or supervision.  Nor does it explain why the deprivation of Ryel's federal constitutional rights would have been avoided with different training or supervision of Romine.  *See generally*, Sanchez v. City of Littleton, 2020 WL 5815913, **11-12 (D. Colo. September 30, 2020) (dismissing without prejudice §1983 failure to supervise and/or train claims alleged against the city based on police conduct;  general allegations were insufficient;  extended discussion, citing authorities).  The failure to train or supervise allegation is conclusory and does not state a claim against the district under § 1983.

No underlying deprivation of rights protected by § 1983 is plausibly alleged on the part of the city.

Romine.  As has been noted, Ryel alleges that officer Romine failed to respond when Ryel called for assistance with N.M.  Ryel alleges that Romine conspired with the district and Martinez to conduct a sham investigation.  Ryel alleges that as a result of the conspiracy, Romine submitted a false police report and that Ryel was arrested on a felony criminal charge which was later dismissed on its merits.  The third-party complaint does not explain whether the alleged sham investigation was an investigation by the school, the district or the city.  It also does not allege what, if any, role Romine played in the investigation.  While Ryel alleges

that a false police report was submitted by Romine, Ryel does not allege that Romine knew the police report was false when submitted.[11]

No underlying deprivation of rights protected by § 1983 is plausibly alleged on the part of Romine.

Martinez. Ryel alleges that non-movant Martinez, the mother of N.M., conspired with the district and Romine to conduct a sham investigation intended to place all the blame on Ryel and to appease Martinez. Ryel does not allege what entity conducted the investigation or what specific role Martinez played in it, if any. Ryel alleges that Martinez filed the instant lawsuit as a result of the alleged conspiracy, but Ryel does not allege how the filing of this action would constitute a deprivation of Ryel's rights protected by § 1983.

No underlying deprivation of rights protected by § 1983 is plausibly alleged on the part of Martinez.

Thus, the § 1983 conspiracy claims alleged against the movants fail because an underlying deprivation of Ryel's civil rights is not plausibly alleged. (This is in addition to the determination that these claims fail because they do not allege specific facts showing an agreement and concerted action among the defendants.)

Turning to Ryel's federal conspiracy claims alleged against the movants under § 1985(3), this statute pertains to private conspiracies that are racially or class-based. These claims fail because the third-party complaint does not allege facts to support a racially or class-based conspiracy. (This is in addition to the determination that

---

[11] See, generally, Hale v. Duvall, 268 F. Supp. 3d 1161, 1167 (D. Colo. 2017) (§ 1983 claim for violation of fourth amendment rights against detectives who authored statement of probable cause to obtain a search warrant, requires proof that the affiant knew the challenged information was false or that the affiant had a reckless disregard for the truth); cf. Sanchez v. Hartley, 65 F. Supp. 3d 1111, 1124-25 (D. Colo. 2014) (after defendant asserted qualied immunity at the motions to dismiss stage, court found that a claim was stated where plaintiff alleged that individual defendants knowingly elicited false confessions from plaintiff then used confessions to prosecute without disclosing their knowledge of the unreliability of the statements).

these claims fail because they do not allege specific facts showing an agreement and concerted action among the defendants.)

Next the court addresses Romine's assertion of qualified immunity. This ground for dismissal applies to Ryel's federal conspiracy claims alleged against Romine in her individual capacity.[12]

To survive a motion to dismiss that is based on an assertion of qualified immunity, a plaintiff must allege sufficient facts to show, when taken as true, that the defendant plausibly violated plaintiff's federal constitutional rights; plaintiff must also show that such rights were clearly established at the time of the violation. *See*, <u>Schwartz v. Booker</u>, 702 F.3d 573, 579 (10th Cir. 2012) (what must be alleged when qualified immunity is raised at the motions to dismiss stage). Ryel has carried neither burden. For reasons already stated, the third-party complaint does not plausibly allege that Romine violated Ryel's federal constitutional rights. In addition, Ryel has undertaken no analysis of clearly established law applicable to Romine's alleged acts. For example, Ryel's response brief identifies no clearly established law that would subject Romine to liability due to the submission of a false or inaccurate police report. Accordingly, in addition to the other reasons for dismissing Romine (and the other movants) from Ryel's federal conspiracy claims, Romine, to the extent she is named as a third-party defendant in her individual capacity, is entitled to dismissal from these claims as they are currently alleged.

In summary, movants will be dismissed from Ryel's federal conspiracy claims. These dismissals are under Rule 12(b)(6). The federal conspiracy claims alleged against the movants under § 1984 and § 1986 will be dismissed with prejudice because these statutes cannot support a conspiracy claim. The federal

---

[12] The third-party complaint does not specify in what capacity Romine is named as a third-party defendant. Reading the third-party complaint as a whole, the court assumes, for now, that Ryel intended to allege an individual capacity claim against Romine.

conspiracy claims alleged against the movants under §1983 and §1985 will be dismissed without prejudice.

One more issue remains with respect to the federal conspiracy claims alleged in the third-party complaint. This issue relates to Ryel's federal conspiracy claims against Martinez.

Although Martinez has not moved for dismissal from any claims, it is clear the federal conspiracy claims alleged against her fail for reasons already discussed in connection with movants' arguments for dismissal.  For instance, the federal conspiracy claims alleged against Martinez under §1984 and §1986 fail because those statutes cannot support a conspiracy claim.  The federal conspiracy claims alleged against Martinez under §1983 and §1985 fail because Ryel does not allege specific facts to show an agreement and concerted action to deprive Ryel of her federally protected rights.  The § 1983 conspiracy claim alleged against Martinez fails because Ryel does not plausibly allege an underlying deprivation of Ryel's federally protected rights.  The §1983 conspiracy claim alleged against Martinez fails because Martinez is not alleged to be a state actor or to have acted under color of law, which is a requirement for a § 1983 conspiracy.  The §1985 conspiracy claim alleged against Martinez fails because § 1985(3), the only potentially applicable subsection, requires a racially or class-based conspiracy, and no facts are alleged to support that type of conspiracy.

In these circumstances it is appropriate for the court to dismiss Martinez from Ryel's federal conspiracy claims *sua sponte*, and the court will do so.

The court has concluded that none of the federal conspiracy claims alleged in the third-party complaint state a plausible claim for relief against the district, the city, Romine or Martinez.  These claims will be dismissed under Rule 12(b)(6).  This ruling means that absent amendment, no federal claims remain for adjudication in this action.

## B. Ryel's State-Law Claims

Movants ask the court to dismiss them from Ryel's state-law claims on various grounds.  This order addresses only movants' sovereign immunity argument, which is based on the third-party complaint's failure to allege compliance with the requirements of the Oklahoma Governmental Tort Claims Act (the OGTCA), an Act which provides a limited waiver of the state's sovereign immunity. Because dismissals on this ground implicate the court's jurisdiction,[13] movants' OGTCA arguments are considered under Rule 12(b)(1).

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may take two forms: a facial attack challenging the complaint's allegations or a factual attack challenging the facts upon which subject matter jurisdiction depends. Holt v. United States, 46 F.3d 1000, 1002 (10th Cir.1995).  Here, the court does not need to go beyond the face of Ryel's third-party complaint to rule on movant's OGTCA arguments.  Consequently, the court treats these arguments as a facial attack on Ryel's state-law claims.  "[A] facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true." *Id.*

All of Ryel's state-law claims are tort claims, and the district and the city are political subdivisions of the State of Oklahoma.  The Oklahoma legislature has consented to judicial enforcement of tort claims against the state and its political subdivisions in the manner narrowly structured by the procedural requirements of 51 O.S. §§ 156 and 157 of the OGTCA.  Shanbour v. Hollingsworth, 918 P.2d 73, 75 (Okla. 1996).  Notice of a tort claim against a political subdivision of the state is

---

[13] Compliance with the statutory notice provisions of the OGTCA is a jurisdictional requirement. Hall v. GEO Group, Inc., 324 P.3d 399, 404 (Okla. 2014).

a mandatory or jurisdictional prerequisite to filing a tort claim against that entity in court.  I.T.K. v. Mounds Public Schools, 451 P.3d 125, 134 (Okla. 2019). Accordingly, a party (Ryel) who asserts a claim against a political subdivision (the district or the city) must allege either actual or substantial compliance with the notice and other requirements of the OGTCA to avoid dismissal of such state-law tort claims. Willborn v. City of Tulsa, 721 P.2d 803, 805 (1986).

Ryel's third-party complaint does not mention the OGTCA or allege compliance with any of its notice or other procedural requirements.  As a result, Ryel has not brought her state-law claims against the district or the city within the limited waiver of sovereign immunity contained in the OGTCA.  The district and the city will be dismissed from those claims, without prejudice, under Rule 12(b)(1).

Romine, as an officer with the Woodward Police Department, is an alleged employee of a political subdivision (the city).  The OGTCA provides that an employee of a political subdivision cannot be named as a defendant for acts within the scope of her employment.  51 O.S. § 153(C).  Accordingly, to the extent the third-party complaint alleges acts by Romine that would fall within the scope of her employment, Romine is entitled to dismissal from such claims based on sovereign immunity.[14]  Romine will be dismissed from any such claims, without prejudice, under Rule 12(b)(1).

The closest Ryel comes to alleging a state-law claim against Romine for acts outside the scope of Romine's employment is the allegation that Romine participated in a sham investigation and submitted a false police report resulting in a felony charge against Ryel which was later dismissed.  Ryel does not allege the nature of the investigation or Romine's role in it.  Ryel also does not allege that Romine

---

[14] The third-party complaint does not specify which acts by Romine are within, or outside of, the scope of her employment.

knowingly submitted a false or inaccurate police report.  In these circumstances the third-party complaint fails to state a plausible claim against Romine for acts outside the scope of Romine's employment.  Romine will be dismissed from any such claims, without prejudice, under Rule 12(b)(6).[15]

Taken together, the court's rulings on Ryel's state-law claims mean that the movants are entitled to dismissal from those claims, without prejudice, under Rule 12(b)(1) or 12(b)(6).  Non-movant Martinez, as the mother of N.M., does not enjoy sovereign immunity, and the requirements of the OGTCA do not apply to Ryel's claims against her.  For this and other reasons, the court does not address the sufficiency of the state-law claims alleged against Martinez in the third-party complaint.

## V.  Other Matters

The district argues that Ryel's claim for punitive damages should be dismissed because punitive damages are not recoverable against it under the OGTCA.  *See*, 51 O.S. § 154(C) ("No award for damages in an action or any claim against the state or a political subdivision shall include punitive or exemplary damages."  The district also argues that punitive damages are not recoverable against a governmental agency under § 1983.  *See*, City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981) (municipality immune from punitive damages under 42 U.S.C. § 1983).  The court notes these arguments but does not address them at this time.  There is no need to do so because the court has found that the district is entitled to dismissal from Ryel's claims on other, broader grounds.

Ryel's briefs repeatedly mention a motion to dismiss filed by the district on June 11, 2019, while this action was in state court.  Ryel contends this motion

---

[15] Claims based on acts outside the scope of employment are not covered by sovereign immunity or the protections of the OGTCA.  As the court's jurisdiction is not implicated, this dismissal is under Rule 12(b)(6) rather than Rule 12(b)(1).

remains pending.  The district, however, states that it withdrew its motion after Ryel's criminal charges were dismissed on November 26, 2019.  The local rules of this court provide that motions which were pending in state court at the time of removal will be considered withdrawn unless, within thirty days of removal, the moving party files a notice of pending motion.  LCvR81.2(b).  That was not done here.  Accordingly, no matter the status of the district's motion while this case was pending in state court, that motion is not pending in this court.

Some of Ryel's briefs incorporate other briefs or motions by reference. Incorporation by reference may serve to extend the number of pages permitted by the local rules of this court, although the court does not suggest that was the purpose here.  Going forward, incorporation by reference is not permitted without pre-approval by the court.  Future filings that do not comply may be stricken.

## VI.  Conclusion

After careful consideration, Tenesha Ryel's motion to remand is **DENIED**. Doc. no. 14.

The motions to dismiss filed by the district (doc. no. 9), the city (doc. no. 4), and Romine (doc. no. 5) are **GRANTED** as follows.

Movants (the district, the city, Romine), as well as Martinez, are **DISMISSED** with prejudice from the federal conspiracy claims alleged in Ryel's third-party complaint under 42 U.S.C. §1984 and §1986.  Rule 12(b)(6), Fed. R. Civ. P.

Movants (the district, the city, Romine), as well as Martinez, are **DISMISSED** without prejudice from the federal conspiracy claims alleged in Ryel's third-party complaint under 42 U.S.C. §§ 1983 and 1985.  Rule 12(b)(6), Fed. R. Civ. P.

Movants (the district, the city, Romine) are **DISMISSED** without prejudice from the state-law claims alleged in Ryel's third-party complaint.  These dismissals are under Rule 12(b)(1) or Rule 12(b)(6), as specified earlier in this order.  The court

does not address the sufficiency of Ryel's state-law claims alleged against non-movant Martinez in the third-party complaint, so those claims remain.

Ryel is **GRANTED** leave to file a "First Amended Counter/Cross-Claims and Third-Party Complaint" within fourteen days of the date of this order.  Any such pleading Ryel opts to file shall include all amendments or additions Ryel seeks to make with one exception.  The exception is that Ryel is not permitted to re-allege any claims under 42 U.S.C. § 1984.  Any amended pleading that does not comply will be stricken.

Alternatively, if Ryel opts not to amend, or if she amends and alleges *only* state-law claims, the court, at that time, will enter a separate order remanding this action to state court.  In that scenario, the remand would not be based on abstention, but would, instead, be based on the court's decision (applying the well-established rules governing the court's exercise of its discretion with respect to the exercise of supplemental jurisdiction) not to continue to exercise supplemental jurisdiction over this action once it is clear no federal claims remain for adjudication.

IT IS SO ORDERED this 6th day of November, 2020.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

20-0833p005.docx

20